## CHAUDOIR v. COTEY.

### No. 5728.

Court of Appeal of Louisiana. Second Circuit.

June 1, 1938.

John R. Hunter & Son, of Alexandria, for appellant.

Polk & Robinson, of Alexandria, for appellee.

DREW, Judge.

This is a suit by Peter Chaudoir, a resident of Rapides Parish, Louisiana, on behalf of his minor son, Peter Chaudoir, Jr., against Frederick A. Cotey.

Plaintiff alleges that on June 21, 1936, at about four o'clock in the afternoon, his son was riding in a Ford automobile belonging to and driven by one R. L. Litton, Jr.; that they were traveling on the Alexandria-Monroe highway toward Alexandria; that as they reached a point just outside of Pollock, Louisiana, a car owned by and driven by Frederick A. Cotey, traveling in the same direction proceeded to pass the car in which plaintiff's son was riding and pulled over to the left side of the road, but in swinging back to the right side, cut too sharply and, as a result, ran into the Litton car striking it with great violence and forcing and knocking it off of the highway into a ditch, finally striking a bridge, and, as a result of said accident, plaintiff's son suffered grave injury; that at the time of the collision the Litton car was well on its right side of the road and traveling at a slow rate of speed; that the highway at the point of the accident is wide enough for three cars, and that there was no traffic on it at the time of the accident; and that as a result of the collision, plaintiff's son suffered contusions and bruises all over the body and severe injury to his nose, as a result of which it is crooked, the right nostril being closed entirely. He has undergone severe pain and is suffering with frequent headaches and his nose is enlarged; that as a result of the accident, the eyes of plaintiff's son are blackened, and that in order to correct the injury to the nose of plaintiff's son, it will be necessary that an operation be performed, which operation will cost plaintiff the sum of $150.00. He itemizes his damages as follows:

Medical and hospital fees....... $ 200.00
Pain and suffering.............. 1500.00

Total ....................... $1700.00

Defendant denied any negligence on his part and set up the following defense:

"Further answering, respondent shows that the automobile in which petitioner's son was riding was an old dilapidated model T Ford, which was so obsolete, worn out, dilapidated, and in such a bad state of repair, its presence on the highways constituted a menace, not only to the occupants of the said car, but likewise to other travelers on said highway. Respondent shows that he is informed, believes, and therefore alleges that the old Ford was in such a state of disrepair, the owner thereof had been offered and was willing to sell the same for the sum of $13.00; that as a matter of truth and of fact, the said automobile was suitable only for junking.
* * *

"Your respondent shows that in passing the car in which plaintiff's son was riding, he did, as alleged in said paragraph, pull over to the left and that as a matter of fact he not only pulled to the left, but likewise passed at a safe distance to the left thereof, the old model T Ford in which petitioner's son was riding and did not

again drive to the right side of the highway until he was well beyond and safely clear of the said model T Ford in which plaintiff's son was riding; that at the time he overtook and passed the car in which petitioner's son was driving, the left side of the highway was clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made by him, the defendant, in perfect safety.

\* \* \*

"Your respondent shows that he admits that he had ample room to pass the car in which petitioner's son was riding, without colliding with the same, and that likewise the car in which petitioner's son was riding had ample room so that it could be passed safely, had it remained on its own or proper side of the road.

\* \* \*

"Further answering, your respondent shows that on the afternoon of June 21, 1936, Peter Chaudoir, Jr., and R. L. Litton, Jr., both of whom are young boys of approximately sixteen years of age, together with two other young boys of similar age and friends of theirs, organized among themselves a swimming expedition to go to a swimming pool at Fish Creek, near Pollock, Louisiana, and some 20 or more miles from the city of Alexandria. That it was mutually agreed between them that, as a means of conveyance from the city of Alexandria to the swimming pool and return, they would use the old dilapidated model T Ford, as hereinabove described in this petition. Shows and reiterates that the old model T Ford was in such dilapidated and worn out condition, its presence on the highways constituted a traffic menace. That the brakes on the said automobile were absolutely defective and worn, so as to be useless; that the steering apparatus was likewise worn out, dilapidated, and obsolete, so much so that the car could not be safely or properly steered or controlled; that the tires on the said automobile were completely worn out and, as a matter of truth and of fact, had blown out several times on the outward trip. That the windshield on the car was so defective and discolored that it was impossible for the driver of the car to see ahead and thus keep a proper lookout; that there was no top on the car; and that all of these defects and conditions were obvious, were easily seen and, as a matter of truth and of fact, were well known to the said Peter Chaudoir, Jr.,

and the said R. L. Litton, Jr., and to the other occupants of the car.

"Respondent alleges that the enterprise upon which the said Peter Chaudoir, Jr., and the others embarked was a joint adventure or enterprise, was mutually agreed upon between them; and that each and every one and all of them had like control over the movements of the other and the operation of the car.

\* \* \*

"That before your respondent started to pass the other car, he gave a sufficient warning of his intention to so do and, as hereinabove alleged, pulled to his left side of the road and started to pass, at a safe distance, to the left of the other car. That as he was passing the other car, Litton and Chaudoir started to and did frantically wave at your respondent and his wife; that because of their waving, which diverted the attention of the driver of the car and Peter Chaudoir, Jr., or because of the defective mechanical and dilapidated condition of the car, the car in which Peter Chaudoir, Jr., was riding pulled to its left over the center line of the highway, over onto the left side of the highway, where the left front wheel or side of the other car struck the extreme rear of the right hand fender of your respondent's car a slight blow and thereafter the car in which Peter Chaudoir, Jr., was riding got out of control and, either because of its defective steering apparatus and general condition or because of the inexperience of the driver thereof, ran off the road on its right hand side.

"Your respondent specifically alleges that he, at all times, remained on his left side of the said highway; that he, in overtaking and passing the other car, at no time pulled to his right, the point of collision being well to his Cotey's left side of the highway; that the sole, only and proximate cause of the accident was the defective mechanical condition of the car in which Peter Chaudoir, Jr., was riding, and knowledge of which was in him or chargeable to him, and the negligent, careless and reckless manner in which the said car was being driven and which was imputed to him, the said Chaudoir."

After trial was had, the lower court awarded judgment for plaintiff in the sum of $165 for medical expenses and $100 for pain and suffering.

Plaintiff has perfected an appeal to this court complaining of the insufficiency of

the award, and defendant has answered the appeal, praying that the demands of plaintiff be rejected in toto.

The case involves only questions of fact. The lower court found the facts to be as alleged by plaintiff. The preponderance of the testimony sustains its finding and we find no good reason for disturbing the lower court's judgment in this respect.

Plaintiff and his friend, who was driving, were returning to Alexandria from a swimming pool located several miles north of Pollock, Louisiana. In the vehicle with them, sitting in the back or truck body, were two other boy friends. They were traveling on their right side of the road at a speed of from 20 to 25 miles per hour. The defendant, who was driving his car, was also returning to Alexandria from some swimming pool. On the front seat with him were his wife and sister-in-law. When approximately two miles north of Pollock, defendant overtook plaintiff and, after trailing the car in which he was riding up an incline to a point where the highway is straight and level, he passed it. Defendant was traveling approximately 35 miles per hour. Before he had entirely passed the plaintiff's car, he cut back to his right side, but undoubtedly miscalculated the distance, possibly due to the fact that the two ladies were between him and plaintiff's car. The result was that defendant's right rear fender came in contact wtih some part of the left front side of plaintiff's car. The blow was sufficient to cause the plaintiff's car to head into the ditch on its right side of the road and run into a bridge which was across the ditch, before the car was stopped, resulting in the injuries to plaintiff.

■ The defense urged that the car in which plaintiff was riding was dilapidated and dangerous, too much so for him to be in, is without merit, so far as this case is concerned. The car was in running shape and was traveling on its right side of the road. The condition of the car was in no way responsible for the accident. The sole and proximate cause of the accident was defendant's car running into the one in which plaintiff was riding.

■ The other defense that plaintiff had had a previous accident in which his nose was injured, only has to do with the amount of the award.

Plaintiff's son, for whose benefit this suit was filed, was sixteen years of age at the time of the accident. His nose was broken and terribly swollen. Both eyes were blackened and his vision bleared for several weeks. Dr. J. F. Litell, an eye, ear, nose and throat specialist, described his injuries as a deviation of the septum of the nose, one side being almost completely blocked, and the external bone of the nose was enlarged and thickened. He said the injury would probably interfere with his general health and would interfere with his sleeping because of the lack of air he would receive in the blocked side of the nose. It would also cause him to suffer with severe headaches. He further testified that an operation on the nose was necessary in order to give him any relief, and the cost of same would be $150. His charges for the treatment given plaintiff to the date of trial were $10 or $15. The lower court allowed $165 to cover these items and the judgment is correct in that respect.

The accident occurred on June 1, 1936, and the case was tried below on October 25, 1937. The injury to plaintiff's nose was very painful and, from the date of the accident to the day of trial, he had suffered almost constantly with headaches and his suffering has not ceased and will not until after a painful operation. The award of the lower court of $100 for pain and suffering is inadequate and should be increased by $400. Plaintiff only prayed for medical bills and pain and suffering and our judgment will necessarily be limited to these two items. The fact that plaintiff had bumped his nose while playing football some years prior to the accident could have no lessening effect upon the pain and suffering caused by the present injury and there is no proof that the septum of the nose was damaged by the previous injury.

Therefore, the judgment of the lower court is amended by increasing the judgment in favor of the plaintiff from $265 to $665, and as amended the judgment is affirmed, with costs.